The next matter before us is 22-2052, Howes v. New Mexico Department of Health. Good morning. May it please the Court, my name is Heather Burke and I am the attorney for Appellant Dr. Ronald Howes. I would like to reserve three minutes for rebuttal. You will be responsible for watching your own time. As an initial matter, I would like to direct the Court to paragraph number 19 in the contracted issue in this case. For some reason, although we've briefed this fully and the Court has considered this contract, everybody appears to have missed the fact that the confidentiality clause in this contract binds only the providers of medical services provided under this contract, which arguably makes Dr. Ronald Howes a party to this contract. It states, the provider shall complete. This is a brand new argument never raised in the briefing, never raised in the district court. Yes, nobody noticed this at all. When it was raised as implied contract claims because we had never seen this contract before. So this is just the fact that he is mentioned and that's why I'll move on to the rest of our argument about this. Okay, you understand there's a waiver issue here. Exactly, I do. And the fact, though, that as a matter of law, the questions here were whether or not he could enforce the forum clause because as a practical matter, as we know, federal courts are courts of limited jurisdiction. As such, when jurisdiction is challenged, it's the party that removed to federal courts burden to show beyond a preponderance of the evidence that the forum is proper. That is consistent with the burden under a mandatory forum clause, which didn't occur here, but that appellees in this case should have had the burden to prove why the mandatory forum clause should not be enforced. And the argument there started by appellees in their motion to dismiss was that Dr. House had to be a third-party beneficiary. Now, under state law and under much of federal law, he does not necessarily need to be a third-party beneficiary in any case. He just needs to be a foreseeable plaintiff under this contract to sue under that contract. And in this case, well, I mean, there's a whole lot of state law that requires him to be a third-party beneficiary, isn't there? Not necessarily. For example, in Starco Incorporated versus Presbyterian Health Plan Incorporated, they discuss the fact that whether or not they're named in this contract doesn't mean that they're not intended beneficiaries. And it's well established for that fact that the intent of the parties when they formed the contract is a question of fact for the jury, not for the court to decide. And in this case, this contract cannot be performed without Dr. House and his class. Well, would you agree that the New Mexico law, which is the law that is selected in the forum selection clause, would require third-party beneficiary status? No, it would not. It would only require that he was foreseeable as a plaintiff or as somebody to enforce rights under this contract. That could be achieved if he were a third-party beneficiary. I mean, foreseeability there, I think, must mean factual things that could happen. But you're arguing, well, it could be foreseeable that a court might grant this legal argument. I'm not sure that's what's intended. I think the question there is whether or not an employee provided under an employment services contract might ever sue for his rights under that contract. And I think that that makes a lot of sense. Does the services contract indicate how much he's going to be paid? Yes, it does. In the addendum for the first contract is for psychiatrists, Dr. House is a psychologist. The addendum for that actually lays out exactly how much he'll be paid an hour, what his actual duties are under this contract. What he needs to do, as I say, this confidentiality clause holds him to the fact that he has to hold patient records confidential and that they'll be stored by the Department of Health. All of this is stuff that locum tenens cannot perform, right? They're agreeing on his behalf to do these things. And obviously, because they're an employment services company, they take a cut of the money that's provided. But we know as a country that we have expected that employees will bear the fruit of their own labor since 1865 when slavery was abolished. Ever since then, we assume that when somebody contracts and they go to work for somebody else, they will be paid. They will get that benefit. To argue that this contract doesn't contemplate paying Dr. House for his labor when they lay it out per hour. I think that's what anybody's talking about. And I don't think slavery has anything to do with this. I mean, no one was expecting him to work for free. But this contract isn't the contract between Dr. House and the hospital where he would actually be performing his services. It's the contract between his employment agency and the hospital. And the employment agency exists solely for the purpose of entering into these contracts to provide these classes of services. And under the Tenth Circuit precedent, what law would the Tenth Circuit apply in interpreting this form selection clause? Well, the form selection clause would be deemed enforceable absent a showing of injustice or fraud by the person resisting. And that's not my question. My question is what law? Is it the law of New Mexico that we would apply in interpreting this contract? You would apply the law of New Mexico because that is the state law of this forum. And that is the law that the forum clause and the choice of law clause required in any case because the state of New Mexico issues these service contracts to all service providers. This was not. But House was not a party to that contract that said we'll apply New Mexico law. Well, he was through his agency, right? Nobody. Well, I mean, you're arguing that he was a third party beneficiary, I think, although you use the word agency. But I think that that's a doubtful proposition. But he certainly was not linearly unless you come up with some theory beyond the language of the contract. He was not a party to that contract, was not named in that contract. Well, the Department of Health and the state of New Mexico are indisputably parties to this contract. But the governor didn't sign this contract, and neither did the secretary of the Department of Health. Some purchasing agent signed it on their behalf and bound them to it the same way locum tenens signed it on Dr. Howell's behalf. They were all agents for their. Did he report to sign it on the doctor's behalf, Dr. Howell's behalf? The locum tenens did, yes, because they're an employment agency. If you go to their website, if you look at their stuff, that's all they do. They just provide people to these hospitals so that they can perform these services. Locum tenens doesn't do any skilled things themselves. They can't perform any of the tasks. Did the locum tenens sign it on behalf of hypothetical future employees that they might provide under the services contract, or did they sign it as a representative of a specific person, Dr. Howell's? At the time that they signed the addendum for psychologists, they had already. Yes, the addendum to psychologists. I'm talking about the services contract. Well, the services contract is the same, as I said, before it was psychiatrists and it was done earlier. At the time that they did psychologists, that was contemplating Dr. Howell's. He was already coming to New Mexico. That was signed at the time he came for this contract. That had him in mind. We don't know of any other psychologists at that time produced under this contract. We don't know anybody else who worked there. We believe, because we've had no discovery, this is an early motion for summary, or to dismiss that we argue has been converted to summary judgment by this contract. We've had no chance to investigate this. Was there an addendum with a list of all of the medical professionals who were covered by the services contract? No. I don't believe that there's ever anything like that, and that's why we would need discovery to be able to determine who was contemplated at what time, if anybody else was ever provided under this contract, if there was ever any other psychologists besides Dr. Howes who was provided. But we do know that they talked about their actual duties and their actual pay, and that they had to have intended to benefit the people that were coming in under this contract. If we don't buy your agency theory, and we think this contract gets interpreted by New Mexico law, is Dr. Howes able to enforce this form selection clause? Yes, he is. Explain to me what in New Mexico law gives Dr. Howes the ability to enforce that provision. As I say, both as a third-party beneficiary and as the fact that he is foreseeable to enforce his rights under this, and the possibility that he was directly contemplated as a provider in the contract itself, it would be a question of fact. What do you mean the possibility that he was provided for directly in the contract? He's not in the contract. Well, provider is, it's not even defined in any of the contract. It's the only clause that binds somebody other than the contractor, which is locum tenens, or the Department of Health. They say the providers will do this, blah, blah, blah, right? That's their thing. They don't say the contractor assures us that the providers will do this. They say the providers will do this. This contemplates that the providers are bound by that contract because they are solely responsible for that. Could they have just said the provider will stand on his head at noon and sing a song? I mean, the provider can just disregard anything it says if the provider is not a party to the contract. Well, that would be another argument, wouldn't it? If it went the other way and they were trying to enforce this clause, what would their arguments be? Because the fact of the matter is the Department of Health, or the state in general, and I believe it was the Department of Workforce Solutions, has used this very mandatory forum clause to argue to the New Mexico District Court that cases are improperly in front of it and need to go back to state court. Because, again, this is a standard contract clause. And when they have been forced into federal court against their will, they have brought that out and said the court doesn't have jurisdiction. We have a mandatory forum clause that needs to send us back. And, therefore, I see that my time is running out. So I'd like to reserve it if possible. It's fine. Thank you. Thanks. Good morning. Good morning. Kelsey Green from the New Mexico Department of Health, Dr. Thomas Lazzaro, and Mr. Richard Grogan. One thing I'd like to correct that the plaintiff started her argument with is referring to Dr. House, the plaintiff, as an employee of, I guess it would have been the Behavioral Institute, or of NMDOH. He is not an employee. The contract, the services contract that is in front or was in front of the district court, is between Locum Tenens and NMDOH. And it provides that anyone that Locum Tenens provides is an independent contractor. And, as we know, independent contractors and employees are two different things. So I just want to clarify. And that is one of the things that — Did House have a separate contract with Locum Tenens? No. As far as I understand, he did not. Relying on the allegations of the three different complaints that were filed in this case, his contract was actually with APcontractor.com, which is, I guess, a form of a placement agency. Is that contract in the record? No, it is not. Okay. So he himself is contracted with a third party. The third party has — we don't even know the name of that third party. But that third party is not listed in the services staffing agreement. That is correct, Your Honor. From the complaint, our understanding is that Dr. House, plaintiff, is contracted with APcontractor.com. Then APcontractor.com is contracted with Locum Tenens. And Locum Tenens is a placement agency that's well known. But that contract is not in the record. No, that contract is not in the record. Locum Tenens, then, is contracted with NMDOH to provide independent contractor, psychiatric and medical health care professionals for the New Mexico Behavioral Institute. They'll work as independent contractors. So there's this additional contract between Locum Tenens and New Mexico Health. Locum Tenens, that is the contract that is in the record. Yes. Yes. Okay. And when the initial complaint was filed and then the amended complaint, which is the removed complaint, plaintiff's initial claims were implied contract. New Mexico Department of Health defendants put in the services contract as an addition to its motion to dismiss. And that's what the district court reviewed regarding, is he a third party beneficiary? Because there is no dispute. He is not named in the contract, no where, no how. The contract is very clearly between Locum Tenens and NMDOH. And today, the plaintiff has raised various factual issues and directed this court to other provisions in the services contract that were never raised to the district court. And, of course, there is a waiver there. Those arguments are not preserved. Was he a foreseeable beneficiary of the contract? The district court considered plaintiff's various arguments. And the foreseeability one is one that did come up, even though it was not set out in a substantive way. The analysis wasn't put forward there. But the question and the argument is, is he foreseeable? Are they closely related? Is Dr. Howells closely related to NMDOH, Locum Tenens, such that he would be foreseeable? But the district court of New Mexico has rejected application of this argument. They have not accepted that that would be extended. What New Mexico, the district court of New Mexico, and what New Mexico relies on is the third party beneficiary analysis. And this is what Dr. Howells. In this case, are you referring to a New Mexico that rejects foreseeability? It is presidential. One second, Your Honor, because I'll get it wrong. Presidential Hospitality, LLC, versus Wyndham Hotel Group, LLC. Give us the site. 333. F's up third. 1179. The pinpoint is 1224-25. DNM 2018. And give me just one moment. That's enough. You don't need to be more precise than that. Thank you. Okay. In Presidential Hospitality, the court noted, and I have to say as well, the plaintiff noted in his brief that this is whether or non-signatory to a contract. And someone not mentioned in the contract can enforce it as an issue of first impression in front of the Tenth Circuit. And Judge Browning in Presidential Hospitality stated, the Tenth Circuit has never considered whether a forum selection clause can bind a non-party. The court has, however, encountered such situations before. It noted the prevailing winds from those United States Court of Appeals stating that their rule is a forum selection clause may bind a non-signatory if the connection between the agreement and the non-signatory is sufficiently strong, i.e., if the party is closely related to the dispute such that it becomes foreseeable that it will be bound. The court, nevertheless, rejected the rule, noting that is wary of applying contracts and forum selection clauses to people who did not sign the contract. Well, and that would be consistent with a lot of our case law in similar situations. That is correct, Your Honor. That is correct, Your Honor. For example, arbitration clauses. Arbitration clauses. And the plaintiff in his reply acknowledged that the arbitration clauses that he had cited in his brief were actually inapposite. Because with the arbitration clauses, they come forward, or they have come forward in this instance, in terms of the home warranty situation, where you have a person who is not party to the original home warranty contract, wants to use the warranty to get something on their house or their building fixed, and then they're like, arbitration? I don't want to do arbitration. And the argument is, and usually the conclusion is, well, if you're trying to get a benefit of the contract, you're bound to the arbitration clause. So in this case, Judge Browning correctly applied the third-party beneficiary analysis. And indeed, you know, when plaintiff came and filed his motion to remand and filed the additional complaint, he relied on the third-party beneficiary analysis. So he has put forth that he is a third-party beneficiary, or he's attempting to. And that's what Judge Browning, the district court, analyzed this case, the contract under, whether the forum selection clause compelled, or excuse me, whether or not he could actually enforce the contract and then compel a remand to state court. That was the question before the court. Now, essentially, the district court could have looked at the third-party beneficiary question first and then determined whether or not he was a third-party beneficiary, because if he's not, then he can't enforce that contract, and there are no rights that arise from that contract and no necessity to remand to state court. And his consideration of this question was completely appropriate. The federal court has a duty, an obligation, and always reviews its jurisdiction. And those questions are properly before the court for their consideration. In terms of the third-party beneficiary analysis, the court looked at whether or not the services contract upon which defendants relied, as well as plaintiff relied, whether there was any evident intent from the four corners of that contract. And he did this as a question of law, which was proper because there was no other evidence in front of him to do so, and the plaintiff never argued it was ambiguous, never argued that there were any problems with the terms. The plaintiff never questioned its authenticity. In fact, he relied on that contract for the motion to remand. And when the district court went through the contract, it said the contract does not contemplate any direct pecuniary compensation to plaintiff. The contract has nothing in it that contemplates any type of direct contact with the plaintiff. There's no health insurance. There are no benefits, et cetera, et cetera, et cetera. What about the argument that the addendum contains the terms for compensation? That argument was not raised in the district court. And to be quite frank, I'm not clear on what provisions of the addendum or the contract Dr. House is referring to. As it's unpreserved, Your Honor, this court need not consider it. And to be perfectly frank, you know, the district court wrote a 202-page opinion in this case. He checked every time. So this was one of his short opinions. Excuse me. I'm sorry. Yes, it was. It was one of the shorter ones. But the district court essentially evaluated every single argument that plaintiff put before him. The district court actually did his own research on some of the questions presented in order to determine whether and that's regarding the qualified immunity and I think on another aspect. The district court did its own research looking for cases in this country that could potentially apply here. He checked every corner. He looked behind every door. If the plaintiff had raised the questions regarding the addendum, and to be perfectly frank, I'm not sure in the services contract where Dr. House is referring to. The court would have considered that. Those arguments are unpreserved. I cannot address them. The appellate record, does it contain the addendum? We're talking about the addendum to the staffing agreement? It's a services contract. But yes, Your Honor, I believe that is what he. What contract is it an addendum to? Again, I assume he is referring to the services contract that was attached to defendant's motion to dismiss. It is actually in the supplemental appendix volume one. Okay, thank you. And I could probably give you a page number if you needed it. But it's there. It's exhibit A to the motion to dismiss. I'm not exactly sure what he is referring to because he didn't give page numbers or anything. So I can't tell you exactly that it's in there? That's fine. We'll figure it out. That's fine. No more on that. Thank you. One of the other substantive questions that was presented by this appeal was the question of the workman analysis in terms of the liberty interest. Is it and? Is it or? What is the answer? Well, in Raynaud, and I hope I'm pronouncing that correctly, this court determined that even though workman had originally written that third element, and of that four element analysis, only the third element is at issue here in this appeal. Even though that third element had been written in the disjunctive, meaning that it was an or, it was actually an and statement, meaning that to show an invasion or a violation of the liberty interest or to allege that, to meet that, you had to show that it occurred in the course of the termination and that it foreclosed future opportunities. This court said? We know. I mean, there's plenty of case law that says that it has to be an alleged defamation in the course of termination. And we also know that you have to have some impediment to your hireability in the future. I don't think anybody ever said that those didn't have to be shown, even though we've got this odd or in the workman. Yes, the case law states that all of the elements in workman have to be shown. But Plaintiff's argument is that that or is an or and that it's disjunctive. This court has their binding precedent that says, no, indeed, it's an and. We had a case that said and before this decision came up. And we've had cases afterwards that have said and. So we bracketed, we basically bracketed the case and said on both sides of it that and is required. That is correct, Your Honor. And so I would just just want to point out that there is binding to the circuit precedent on that. And essentially it is a non-issue. You know, even if the court were to consider it an or, the district court looked at both elements and found that plaintiffs had not met their burden on either in terms of alleged. Excuse me. I'm sorry. Yeah, and I have a little trouble with his analysis on the first prong of that, because I think if you read the complaints, the operative complaint, I think there's an allegation that connects these statements to the defendants here. And so I think the court's analysis was that there was no allegation that the statements that he didn't have a license or whatever it was could be connected to these folks. But I do think there's an allegation in there, if you take the inferences in favor of the plaintiff. So if I see it that way, then you've got to have an and. I'm sorry, if you see it that way, Your Honor. Yeah. If I see that prong one has been barely met by the allegations in the complaint, then where it would fail would be on the second prong, which I think they've conceded that they do not meet. That is correct, Your Honor. The district court said that they're reading the complaint in a very holistic way. You could see that potentially there was an inference, right, that the statements occurred. His concern was that he did not directly connect them to the people, meaning Dr. Massaro and Mr. Grogan, from whom Dr. Howes was seeking damages. But it is very clear in the complaint, he states, I have been able to secure other employment. I have been able, I believe it's shorter term contracts around the country. So he, two prongs, the and fails on the second. I would state that the district court in its analysis of the first prong also came to the correct conclusion. However, we don't have the and. I see that my time is up. Defendants would respectfully request that you affirm the district court. Thank you very much. Thank you. As an initial matter, I want to address the Shell Company AP contractor. It is literally a Shell company. That's not in the record, is it? Yes, it is. It's a Shell company. It has the same address. So AP contractor signed the contract with Dr. Howes, but never had any other interactions with him. All of his paychecks come from over there. Just because it has the same address does not show that it's a Shell company. And the same officials, all the same parties are the same. That wasn't necessarily so with Shell. Shell means that it's a sham company. It doesn't have any function. But this could have a lot of function with the same address and the same employees and the same officers. It does not appear to. It appears to be something that you could pierce the corporate veil through even if you needed to. Nonetheless, he never had any interactions with them. He was paid by locum tenens, all of his paychecks in locum tenens. He never was contacted by anybody from AP contractor. He's never dealt with those people. They don't have a website that he goes to. And this is a problem in traveling cases in general where they do Shell companies like kind of Russian nesting dolls, where the people contracting have no idea what rights they've lost through these contracts because they think it's a direct contract and they're never told that they have other rights. Like in this case, the contract Dr. Howes signed says that he gets 30 days' notice before they terminate. He has that contractual right. But we see in the contract provided by Department of Health that they can terminate for any reason or no reason. So where does that right go when he agrees to that in his contract? Now, in this case, we did raise – Well, those contracts were between different people. Well, but they were on his behalf, right? None of the people involved in this signed the contract for services, right? Richard Grogan didn't sign this contract. None of these people did. We did raise the addendum. It's only one exhibit. It is the part for psychologists at the end. There were two different contracts. It's all part of Document 7-1. They're the latter pages of that. And it's unclear if they were clearly considered by the district court because he keeps talking about psychiatrists, which Dr. Howes is not a psychiatrist. So in that case, we would also argue just in the last seconds is the problem that I found in the analysis of the Workman cases is that all of the cases talking about it being together are cases where the person was alleging foreclosure, future opportunities, but was never terminated. There have not been cases that I could find where a person was terminated and thereby the tangible damage was done where you don't know what the future speculated damages are. We haven't done discovery. We don't know if there are notes in his file saying this guy was accused of a crime. We don't know if he got different assignments because of that. We haven't had a chance to do this. This should have been in a light most favorable to us, and there's no evidence that it was. Thank you. Thank you. We will take this.